STATE *vs.* WILLIAM A. BURNS.

DECEMBER 7, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is a criminal complaint which was brought under general laws 1938, chapter 606, §20, and charges the defendant with committing a simple assault and battery. A trial in the superior court resulted in a verdict of guilty and thereafter the trial justice denied defendant's motion for a new trial. The case is here on his bill of exceptions to the denial of his motions for a change of venue and for a new trial, and also to portions of the charge as given, to the denial of his requests to charge, and to certain evidentiary rulings during the trial.

The evidence for the state in general tends to show the following facts. The complaining witness Harry J. Main, hereinafter referred to as the complainant, filed a sworn complaint and caused a warrant to be issued against the defendant William A. Burns charging him with a particular assault and battery. The complainant is an officer of a political party's committee in the city of Pawtucket, and together with several other officers thereof visited the

polling place at Nathanael Greene school in that city around 10 o'clock on the morning of November 7, 1950. A general election was being held on that day in this state and complainant went to the school to observe the conditions of voting and the work of his party's appointed representatives.

The complainant and four or five others were congregated in an area in the polling place outside the rail and for a short period were talking among themselves. All was quiet until defendant arrived with two police officers and shortly thereafter asked complainant what he was doing there and if he were a voter in that precinct. When complainant answered the latter question in the negative defendant then inquired if he were an appointed election official. When complainant again replied in the negative and admitted that he was not present in any of the above capacities, but only as an officer of his party, defendant shouted an order that complainant would have to get out and thereupon grabbed him by the left arm, twisted him around, and pushed him toward the door, at the same time ordering two other policemen to eject complainant. These officers then escorted complainant out of the polling place whereupon he entered his car and with others went elsewhere on their party's business.

The complainant stated that he offered no resistance to the defendant and testified over objection that he had "a subconscious fear" of defendant because of some alleged treatment he had received at his hands in the election of 1938. However, he also stated in cross-examination that he did not fear defendant or anybody. According to certain other evidence for complainant there was no disturbance of any kind before defendant came in, and neither the clerk nor the inspector of the board of elections was called upon by the warden to agree with or to approve any specific order that may have been given by him to defendant directing the removal of complainant on that

day. However, there is no evidence that either the clerk or the inspector protested or objected to the warden in any way concerning defendant's action toward complainant, although both officials witnessed the incident.

On the other hand the testimony for defendant in substance tended to show that he was a voter in that precinct and came there on that morning primarily to cast his vote; that he also was captain of police in Pawtucket in charge of a detail to supervise the general order and the conduct of policemen assigned to duty at various polling places in the city; and that when he arrived he spoke to the officer on duty, asked who the warden was, and then talked with the latter at the rail. The warden then told him that he wanted "no loiterers" in the polling place, at the same time pointing with his finger to the group of five men, which included complainant, who were congregated near the opening in the rail through which voters had to pass after casting their votes.

The defendant testified that he spoke to complainant and asked him several questions to determine whether he or any of the group was a voter or an election official who was properly assigned to duty in that polling place. Upon receiving negative answers to these questions, he explained to them in a normal way that they would have to leave the room. The complainant did not go immediately but started to protest and the defendant repeated his order that complainant would have to get out.

According to defendant there was no shouting or scuffle, as complainant had testified, and no hands were laid on him. He specifically denied grabbing complainant's arm and twisting him around or pushing him toward the door and into the custody of other officers to be ejected. The officers who were at the door outside had come in to escort complainant and his associates when commanded by defendant, who then was carrying out what he understood to be an order of the warden, and all walked to the door

normally without any pushing by defendant or other unusual incident.

Several of the officials at the polling place who testified admitted that shortly after defendant's arrival he had asked for, and had talked with, the warden. The latter testified that he had wanted to see defendant and did talk with him at the rail just prior to the incident. None of the witnesses heard this conversation and there is conflict in the testimony concerning it. The warden stated in substance that it related to proposed instructions to police officers on duty relative to keeping voters in line. The defendant testified that the warden stated he wanted no loiterers and pointed to the group then congregated near the exit portion of the rail where complainant and others were talking.

All the election officials apparently agree, contrary to certain evidence for complainant, that there was no other incident, and only one such official corroborated complainant on defendant's alleged taking him by the arm and turning him forcibly toward the door. The inspector of the board of elections, who was a witness to the incident, testified that there was no scuffling, pushing or shoving; that the defendant's command to complainant was in a tone of authority but not a shout; and that though observing them he did not see defendant lay hands on the complainant who walked normally toward the door.

The defendant first contends that the trial justice erred in denying his motion for a change of venue. This ruling was the subject of a petition for a writ of certiorari which defendant brought to this court after the trial had commenced and for that reason it was not entertained. However, petitions for certiorari based on the same claim and grounds were made in two companion cases, and our opinion in those cases has this day been filed. *State (Campbell)* v. *Burns* and *State (Rex)* v. *Burns,* 79 R. I. 130. In view of such decision and because of our final conclusion

herein granting a new trial on other grounds, this exception becomes immaterial and is therefore overruled.

The defendant also relies strongly on his exceptions to a certain part of the charge as given and to the refusal of the trial justice to grant his second request to charge. As these two exceptions are related they will be treated together. The trial justice first instructed the jury generally that the complaint and warrant here "charges simple assault only. * * * It isn't a criminal assault * * *." He then defined a "criminal assault" as "being an assault where sexual damage is alleged in crimes against women. The words 'criminal assault' have no direct bearing upon the charge here. The charge here is simple assault. It is not a crime in the sense of the word that we use 'crime.' It is a slight offense against the law and it must be treated by the jury as such." The defendant excepted to that portion of the charge and also requested the trial justice to instruct the jury that "The warrant in this case charges Captain Burns with a criminal offense." This request was denied.

Apparently the trial justice, in attempting to distinguish between an aggravated or serious assault and this complaint, made the mistake of incorrectly restricting "criminal assault" to certain sex offenses, and in charging elsewhere that this complaint was not a crime or criminal offense. In our judgment the complaint here charged an assault and battery under G. L. 1938, chap. 606, §20, and is a criminal offense carrying a penalty. It should have been treated in accordance with all criminal procedures, including the obligation on the part of the state to establish a sufficient general criminal intent.

The portion of the charge objected to, coupled with the denial of defendant's second request to charge, in effect removed the case from consideration as a criminal offense. It also relieved complainant substantially of establishing any general criminal intent or its equivalent and could have misled the jury to believe that a conviction here

would not have amounted to a criminal record against the defendant. In our judgment the first portion of the charge under consideration and the denial of defendant's second request for instructions constituted error.

The defendant also excepted to another part of the charge. After explaining to the jury the method by which conflicting evidence as to the details of the incident should be considered, the trial justice instructed as.follows: "Now the law says that if there is anybody in that ward room that was not behaving as they should, the Warden shall order his removal. The police officer was on duty in that ward room and the warden may order that police officer to go and eject that man or to arrest him. It will be presumed that the Warden did so in accordance with the law that has been read to you to-day." Up to that point we find no error and such instruction became the law of the case.

The court, however, following a repetition of the statement that the police officer as such could not eject anybody from the ward room unless so ordered by the warden, further instructed the jury: "The mere fact that this defendant was a police officer of the City of Pawtucket doesn't excuse him. * * * Did this defendant do what the complainant said he did? Did he put his hands on the complainant's arm and twist him around? Did these officers take him out of the ward room as the complainant said he did, taking into consideration all the other facts and surrounding circumstances?"

In our judgment these last-quoted sentences of the charge in effect leave out of consideration any reference to the disputed question of fact which was controlling here. The defendant was not contending that he had the right merely as a police officer and on his own initiative to eject the complainant without previous instruction or authorization to that effect from the warden. It is undisputed that the defendant and warden had talked together just before the incident in question. However, the exact nature and

extent of their conversation is the subject of conflicting evidence. It was for the jury under proper instruction to determine therefrom whether defendant in the circumstances reasonably had the right to understand that he was being instructed or authorized by the warden to remove complainant and whether he executed such order, if given, in a reasonable manner.

The charge, however, appears to have directed the jury to determine that question solely on what the complainant said, without any reference there or elsewhere to the testimony of defendant as to the warden's instructions to him. If the latter had directed or authorized the removal of complainant, defendant could have acted as complainant testified without necessarily being guilty of a criminal assault. In the circumstances of record the existence or nonexistence of such authorization was a controlling issue, even if the incident happened as complainant stated, and therefore the charge was inadequate and misleading in that respect. When that error is considered together with the others hereinbefore referred to we are of the opinion that the charge as given constituted prejudicial error.

The complainant, however, seeks to argue that in any event the defendant's act was entirely without warrant in law even if the warden had directed the removal of complainant. In support thereof he argues that public laws 1940, chap. 818, sec. 10, must be construed to limit the warden's former power and to prohibit him from authorizing the removal of any person without first expressly consulting the clerk and obtaining his specific agreement thereto. In the event of disagreement between them, he contends the warden must then consult and obtain the express approval of the inspector of the board of elections as a specific condition precedent to the validity of any and every order of the warden of this nature.

The sufficient answer to this contention is that the trial justice had instructed the jury in substance and effect that, in the absence of a showing of any protest, objection,

142

or disagreement by the clerk or inspector, it would be assumed that the warden had acted in accordance with law if in fact he had issued such instruction to defendant. In any event the complainant is acting for the state as prosecutor and as such has no right to press any objection here to the correctness of the charge as given.

In view of our conclusions as to the charge and defendant's second request to charge, we need not consider the other exceptions.

The defendant's eighth, ninth and tenth exceptions are sustained, and the case is remitted to the superior court for a new trial.

*William R. Goldberg*, for State.
*James F. McCoy*, for defendant.